UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

MOHAMMED SADAT, M.D.

       Plaintiff,

       - against -

STATE UNIVERSITY OF NEW YORK
UPSTATE MEDICAL UNIVERSITY,
MANTOSH DEWAN, M.D. as Interim President of
Upstate Medical University,
P. SEBASTIAN THOMAS, M.D. as Chair
of Anesthesiology of Upstate Medical University and
individually, and CARLOS J. LOPEZ, M.D.
as Director of the Anesthesiology Residency Program
of Upstate Medical University and individually,

       Defendants.
------------------------------------------------------------------x

No. 19 cv 05053 (JMF) (KNF)

PROPOSED
AMENDED COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff Mohammed Sadat, M.D., by his attorneys Eisenberg & Schnell LLP, as and for his complaint against defendants State University of New York Upstate Medical University, Mantosh Dewan, M.D., Interim President of Upstate Medical University, P. Sebastian Thomas, M.D., Chair of Anesthesiology of Upstate Medical University, and Carlos J. Lopez, M.D., Director of the Anesthesiology Residency Program of Upstate Medical University, alleges as follows.

## PRELIMINARY STATEMENT

1. Plaintiff Mohammed Sadat, M.D., was a post-graduate medical resident ("resident") and employee in the State University of New York Upstate Medical University Anesthesiology Residency Program ("Program") until his disability and treatment caused him to be absent and unable timely to continue the Program. While defendants knew about and

provided some prior leave and accommodation for his disability, they terminated his medical residency training and his employment while he was absent due to his disability; and although he subsequently was able to continue training, refused to readmit him to the Program and his employment as a resident.

2. Plaintiff brings this action to remedy discrimination and retaliation on the basis of disability, in violation of Titles I and II of the Americans with Disabilities Act, as amended, 42 U.S.C. §§12132 *et seq.* ("ADA"); the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§701 *et seq.* ("Rehabilitation Act"); and the New York Human Rights Law, N.Y. Exec. Law, Article 15, §§ 290 *et seq.* ("NYHRL").

3. Plaintiff seeks declaratory and injunctive relief, damages, attorneys' fees and costs, and any other appropriate legal and equitable remedies under the applicable laws.

## JURISDICTION, VENUE AND ADMINISTRATIVE EXHAUSTION

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331, 1343(a)(4), 29 U.S.C. §794a(a)(1), and 42 U.S.C. §§2000e, 12117.

5. Venue is proper in this District pursuant to 42 U.S.C. §12117(a), 29 U.S.C. §794a(a), and 42 U.S.C. §§2000d, 2000e-5(f)(3) as this District is within the State of New York, the State in which the unlawful practice is alleged to have been committed.

6. Plaintiff was a resident who was also employed by, and timely filed a charge of employment discrimination ("charge") against, defendant State University of New York Upstate Medical University with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violation of the ADA, Title I. After its investigation of the charge, the EEOC issued a Final Determination dated August 12, 2019, finding reasonable cause to believe that defendant State University of New York Upstate Medical University discriminated against plaintiff on

account of his disability with respect to both his termination from the residency Program and the subsequent denial of his readmission to the Program. Following defendant's refusal to engage in conciliation and referral of the charge to the U.S. Department of Justice ("DOJ"), the DOJ issued plaintiff a Notice of Right to Sue dated September 17, 2019, which plaintiff received on September 25, 2019. Plaintiff filed this proposed Amended Complaint within ninety days thereafter.

## PARTIES

7.      Plaintiff Mohammed Sadat, M.D. ("Dr. Sadat" or "plaintiff"), is a citizen of the United States and a medical school graduate. Plaintiff is a qualified individual with a disability, a record of a disability, and whom defendants regarded as having a disability, within the meaning of the ADA, 42 U.S.C. §12102, and the Rehabilitation Act, 29 U.S.C. §705(20), and is therefore entitled to protection from discrimination based on disability as an employee of and participant in defendants' operations, programs, and activities, and from retaliation for exercising his statutory rights to an accommodation to address his disability.

8.      Defendant State University of New York Upstate Medical University ("Upstate") is a medical school and academic medical center of the State University of New York located in Syracuse, New York. Upstate receives federal financial assistance, is a public entity covered by the ADA and the Rehabilitation Act, and is an employer under the Rehabilitation Act and the NYHRL.

9.      Defendant Mantosh Dewan, M.D., is Interim President of Upstate, and is sued in his official capacity. Dr. Dewan has authority to admit or direct the readmission of plaintiff to the Program and to contract with him for employment, and is named to effectuate prospective relief.

3

10. Defendant P. Sebastian Thomas, M.D. ("Dr. Thomas"), is Chair of Anesthesiology of Upstate, exercises supervision over the Program, and is sued in his official capacity and individually as an aider and abettor under the NYHRL. Dr. Thomas has authority to admit or direct the readmission of plaintiff to the Program and to contract with him for employment. He aided and abetted in the discriminatory acts of which plaintiff complains and is a defendant to effectuate prospective relief under the federal law claims and for damages under the NYHRL.

11. Defendant Carlos J. Lopez, M.D. ("Dr. Lopez"), is Associate Professor of Anesthesiology and Program Director of the Program, and is sued in his official capacity and individually as an aider and abettor under the NYHRL. Dr. Lopez has authority to readmit plaintiff to the Program and to contract with him for employment. He aided and abetted in the discriminatory acts of which plaintiff complains and is a defendant to effectuate prospective relief under the federal law claims and for damages under the NYHRL.

## FACTUAL ALLEGATIONS

12. Dr. Sadat is a physician who was employed as a resident and received post-graduate medical education and training in the Program. As described below, defendants separated Dr. Sadat from the Program and denied him readmission because of his disability.

13. Defendant Upstate employs and trains physicians as residents in post-graduate medical educational programs, including in the Program. Upstate receives federal financial assistance.

14. The Program is a structured educational activity comprising a series of clinical and/or other learning experiences in graduate medical education, designed to train physicians to enter the unsupervised practice of medicine in the primary specialty of anesthesiology.

15. Program residents are trained and employed by performing clinical duties under supervision of attending physicians. They receive post-graduate clinical education in anesthesiology under faculty supervision and guidance, including progressive responsibility for selection of anesthetic agents and techniques, anesthetic management of complex operative procedures, rotations in active pain and other hospital services, and responsibility for clinical management.

16. The Program is accredited by the Accreditation Council for Graduate Medical Education ("ACGME") under standards and requirements to which the Program must adhere. The ACGME Program Requirements for Graduate Medical Education in Anesthesiology recognize that "Residency is an essential dimension of the transformation of the medical student to the independent practitioner along the continuum of medical education" under the concept of "graded and progressive responsibility."

17. In order to attain the required level of independent medical practice, the Program consists of thirty-six months of interaction with patients under the guidance and supervision of faculty members. As they progress in the Program, residents gain experience and demonstrate growth in their ability to care for patients, and assume greater independence in providing care under supervision of attending physicians.

18. The Program must provide education over the continuum of the Program that culminates in sufficiently independent responsibility for clinical decision-making and patient care, including competency-based goals and objectives at each educational level as the resident advances through the program, regularly scheduled didactic sessions, integration of ACGME competencies into the curriculum, and regular evaluation of residents by faculty.

19. Under the ACGME Requirements, the Program also is responsibile to address the well-being of residents, including providing attention to work intensity that impacts well-being, encouraging optimal resident well-being, and recognizing and providing opportunity for assistance and treatment for mental health conditions.

20. Residency programs provide physicians with employment and with post-graduate specialized resident training that prepares them in specific practice areas to be eligible for certification by specialized medical Boards. Although residents are appointed for one-year periods, it is expected that they will complete successive years and the entire continuum of training in order to become eligible to take and then pass examinations to become certified in the specialty by the American Board of Anesthesiology following training.

21. Anesthesiology resident physicians at Upstate work there under successive renewable appointment contracts with the expectation that with satisfactory performance, the resident will be renewed until the training program is completed and Board eligibility requirements are met.

22. Dr. Sadat received his M.D. from St. George's University Medical School in 2011. After he graduated from medical school, he entered the surgery residency program at SUNY Upstate in August 2011. He performed well and successfully completed twenty-three months of the surgery residency.

23. Because he was then more interested in specializing in anesthesiology, he then applied to and was accepted by the Program in July 2013. Dr. Sadat successfully completed his first year in the Program (2013-14) and, by making up the time missed for necessary and accommodated medical leave, the second year (2014-15).

24. Dr. Sadat's clinical performance in the program was very good. In addition to formal evaluations, he received positive feedback from the attending physicians who supervised him. As all other residents, he was permitted to work independently with supervision of attending physicians. Anesthesiology attending physicians told him that they were "relieved" to see he was the resident on call with them, were glad he was in their operating room or was coming in and taking over, and that they had a really "good team" when he arrived for call on weekends. Surgical residents and attending physicians routinely told Dr. Sadat they were glad he was the anesthesia resident in their operating room. No attending physician voiced criticism of Dr. Sadat in person when he worked with them. Dr. Sadat's clinical evaluations were consistent with these favorable comments about his performance.

25. Department Chair Dr. Thomas called Dr. Sadat his "future pain fellow" because of the quality of his work in the pain clinic. Program Director Dr. Lopez often met with Dr. Sadat to review his performance and assessments of his clinical work by other attending physicians, which was always satisfactory.

26. Dr. Sadat had some difficulty with the standard "in service" tests. In April 2015, he was diagnosed with bipolar disorder. Since being treated and taking medication, he passed the American Board of Anesthesiology Basic examination and the Step 3 examination of the U.S. Medical Licensing Examination ("USMLE"). When Dr. Sadat later met with Dr. Lopez about returning to the program as his treatment had been successful, Dr. Lopez suggested that Dr. Sadat's difficulties with the examinations were because of his mental condition.

27. Dr. Sadat signed his residency contract for the academic year July 1, 2015 – June 30, 2016. In April 2015 after Dr. Sadat was diagnosed with bipolar disorder, he took a medical

7

leave for approximately May through July 10, 2015. When he returned from leave, he informed Dr. Lopez of his bipolar disorder diagnosis.

28. Dr. Sadat returned to work in August and worked through November 2015. Dr. Sadat spoke with Dr. William Grant, Chair of Graduate Medical Education, on October 19, 2015 and told Dr. Grant about his bipolar diagnosis and condition. He discussed taking the USMLE Step 3 examination, which normally should be passed before the end of the second year. Since Dr.Sadat's second year was extended due to the days he had missed while being out on leave, Dr. Grant told him that pending discussion with his psychiatrist, Dr. Grant did not see a problem in giving Dr. Sadat an extension for the Step 3 examination as long as Dr. Sadat would pass the exam before nearing the end of his third year. Dr. Grant said that he would work with Dr. Sadat and would call his psychiatrist to get more information.

29. From December 2015 – August 2016, Dr. Sadat went on medical leave to address worsening bipolar symptoms. Dr. Sadat applied for this leave as FMLA leave with a last tentative return date of September 1, 2016. He hand delivered the paperwork signed by his psychiatrist requesting FMLA leave to the human resources office. When he handed in this last request for leave until September 1, 2016, the representative in human resources looked it over and said Dr. Sadat was "all set."

30. No one in human resources ever mentioned anything about FMLA or other leave expiring, that the September 1 return date was too long, or that he could not stay out until or return by September 1. The human resources representative remembered enough about Dr. Sadat when he delivered the form, because Dr. Sadat had turned in previous requests, to tell him that he would need a return to work letter since he would be gone for so long. Human resources

accommodated his request for the leave but did not tell Dr. Sadat that the FMLA or other leave would expire prior to September 1.

31. When Dr. Sadat's treatment resulted in his being well for a sufficient time to enable him to return to work, and having been cleared by his psychiatrist to return on September 1, 2016, he submitted the required doctor's form a week prior to his anticipated return date. Dr. Sadat contacted Dr. Lopez on August 29, 2016, but Dr. Lopez said he was leaving for vacation and to see the Graduate Medical Education ("GME") office at SUNY Upstate.

32. On August 30, 2106, Dr. Sadat spoke to the GME director who told him for the first time that he was no longer a resident and that his residency had been terminated while he was on leave. Dr. Sadat had never been informed or told this. He had not received any notices, letters, messages, texts, voicemails, or e-mails of termination or possible termination from human resources or the Program, nor did he ignore communications or notices from the Program.

33. Dr. Sadat met with Dr. Lopez, on September 23, 2016. Dr. Lopez told him that he was no longer a resident with a spot for the coming year and would have to reapply to the Program. Dr. Lopez said he should get letters of recommendation. He said that Dr. Sadat had made a lot of people question him, and Dr. Sadat would have to show them he was ready, what he had done about his medical issues, and that his medical issues had been taken care of. It was clear that the questions and issues to which Dr. Lopez referred were about Dr. Sadat's medical and disability condition. Dr. Lopez also said that he would answer inquiries about Dr. Sadat from other residency programs by saying that he had had some medical issues and would be a "good anesthesiologist" if given a chance.

34. Dr. Sadat reapplied to the Program and submitted four letters of recommendation, including three from doctors who were teaching in the Program. Although Dr. Lopez said Dr.

Sadat could contact him during the re-application process, when Dr. Sadat did so, Dr. Lopez did not respond to questions. Dr. Sadat was not even given an interview, and his application was denied.

35. In October 2016, Dr. Sadat made an appointment with the Department Chair Dr. Thomas to discuss possible research projects on which he could work while trying to regain admission to the Program. When he arrived for his appointment, he was not permitted to go through security to enter the hospital, and the secretary said that Dr. Thomas would not see him. The secretary said Dr. Thomas had nothing to discuss with him, had no research opportunities for him, and then hung up the phone on him. The retaliatory lack of support and unexplained curtailment of communication contrasts with Program's customary protection of its residents and efforts to help them succeed.

36. Before returning from his last leave, Dr. Sadat had performed well and successfully completed more than two-thirds of the thirty-six month residency training program. He was medically and clinically qualified to continue in the Program. The Program had renewed his contract for his final year of anesthesiology residency training before he required a medical leave in December 2015. He was medically cleared to return in September 2016, having successfully treated his disability. Dr. Sadat's absences from the Program and employment were, as defendants knew, caused by his illness and disability.

37. While initially accommodating Dr. Sadat, defendants refused to continue doing so, terminated him from the Program and employment, and denied him readmission and re-employment because of his illness and disability, regarding him as having a disability, and his having a record of a disability, and in retaliation for exercising his right to disability accommodation and leave.

38. Defendants' failure to accommodate and termination from the Program has prevented Dr. Sadat from successfully applying for and gaining admission to other residency programs for which he would be qualified.

## FIRST CLAIM FOR RELIEF
(ADA, Title I – Discrimination and Retaliation)

39. Plaintiff repeats and realleges ¶¶1-38 as if such paragraphs were fully set forth herein.

40. By their acts and practices described above, defendants intentionally discriminated against Dr. Sadat in employment, including denying him the reasonable accommodation of additional leave to obtain treatment for his disability and separating him from and denying reinstatement to his employment, and also retaliated against him for exercising his right to disability accommodation and leave, on the basis of his disability, in violation of the ADA, Title I, 42 U.S.C. §§12112, 12117(a), 12203(a).

41. Defendants acted out of discriminatory animus or ill will by because of plaintiff's disability. Defendants acted with malice and/or reckless indifference to plaintiff's protected rights under the ADA.

42. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, and other compensable damages as a result of defendants' discriminatory actions.

43. For the above violations of the ADA, Title I, plaintiff is entitled to declaratory and injunctive relief, including reinstatement and re-employment in the Program, and to recover attorneys' fees and costs pursuant to 42 U.S.C. §§12117(a), 12203(c), 2000e-5(3), and 29 U.S.C. §§794a, 1981a.

## SECOND CLAIM FOR RELIEF
## (ADA, Title II – Discrimination and Retaliation)

44.     Plaintiff repeats and realleges ¶¶1-43 as if such paragraphs were fully set forth herein.

45.     By their acts and practices described above, defendants excluded Dr. Sadat from participation in the programs and activities of the Program and denied him the benefits of the Program and participation therein, including denying him a reasonable accommodation of additional leave to obtain treatment for his disability, additional time to complete residency training, and continuation of his post-graduate medical education, retaliated against him for exercising his right to disability accommodation and leave, and prevented him from gaining admission to other residency programs, thereby discriminating and retaliating against him by reason of his disability, in violation of the ADA, Title II, 42 U.S.C. §§12132, 12203(a).

46.     Defendants acted because of discriminatory animus or ill will by reason of plaintiff's disability.  Defendants acted with malice and/or reckless indifference to plaintiff's protected rights under the ADA.

47.     Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, and other compensable damages as a result of defendants' discriminatory actions.

48.     For the above violations of the ADA, Title II, plaintiff is entitled to declaratory and injunctive relief, including reinstatement and readmission to the Program, and to recover compensatory damages, interest, and attorneys' fees and costs pursuant to 42 U.S.C. §§12133, 12203(c), 2000e-5(3), and 29 U.S.C. §§794a, 1981a.

THIRD CLAIM FOR RELIEF
(Rehabilitation Act – Discrimination and Retaliation)

49. Plaintiff repeats and realleges ¶¶ 1-48 as if such paragraphs were fully set forth herein.

50. By their acts and practices described above, defendants intentionally discriminated against Dr. Sadat in employment, excluded Dr. Sadat from participation in the Program, and denied him the benefits of the Program and participation therein, including denying additional leave to obtain treatment for his disability, additional time to complete residency training, and continuation of his post-graduate medical education, retaliated against him for exercising his right to disability accommodation and leave, and prevented him from gaining admission to other residency programs, thereby subjecting him to discrimination and retaliation solely by reason of his disability, in violation of the Rehabilitation Act §504, 29 U.S.C. §794(a).

51. Defendants acted intentionally and with deliberate indifference to Dr. Sadat's protected rights under the Rehabilitation Act.

52. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, and other compensable damages as a result of defendants' discriminatory actions.

53. For the above violations of the Rehabilitation Act, plaintiff is entitled to declaratory and injunctive relief, and to recover backpay, compensatory damages, interest, and attorneys' fees and costs pursuant to 29 U.S.C. §794a(a)-(b) and 42 U.S.C. §§1981a, 2000e-5(3).

## FOURTH CLAIM FOR RELIEF
### (NYHRL – Discrimination and Retaliation)

54. Plaintiff repeats and realleges ¶¶ 1 - 53 as if such paragraphs were fully set forth herein.

55. By their acts and practices described above, defendants intentionally and willfully discriminated against Dr. Sadat because of his disability and having a record of disability, in violation of the NYHRL, N.Y. Exec. Law §§296(1)(a) and (6), and retaliated against him for exercising his right to disability accommodation and leave, in violation of the NYHRL, N.Y. Exec. Law §296(7).

56. Defendants acted with malice and/or reckless indifference to Dr. Sadat's protected rights under the NYHRL.

57. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, and other compensable damages as a result of defendants' discriminatory actions.

58. For defendants' intentional violations of the NYHRL, plaintiff is entitled to appropriate equitable relief, and to recover compensatory damages and interest pursuant to N.Y. Exec. Law §297(9).

## RELIEF SOUGHT

WHEREFORE, plaintiff requests that this Court exercise jurisdiction and award him:

(a) appropriate declaratory and injunctive relief, including but not limited to reinstatement and readmission to, and re-employment in, the Program and appropriate reasonable accommodation therein, correcting plaintiff's credentials files to remove any stigma from his unlawful removal from the Program, and restraining defendants from engaging in further adverse or retaliatory conduct;

14

(b) backpay and other employment benefits;

(c) compensatory damages;

(d) pre-judgment and post-judgment interest;

(e) reasonable attorneys' fees and costs incurred in the prosecution of this action; and

(f) such other legal and equitable relief as this Court deems appropriate and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, 29 U.S.C. §626(c)(2), plaintiff demands a trial by jury in this action.

Dated: New York, New York
September 27, 2019

Respectfully submitted

_____
Herbert Eisenberg (HE 8796)
Julian R. Birnbaum (JB 6721)
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, NY 10279
Telephone: (212) 966-8900
Fax: (212) 966-2505
*Attorneys for Plaintiff Mohammed Sadat, M.D.*